UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ATHENA M. WEAKLEY, ) | |
| as substitute party for Shaun Robert Weakley ) | |
| Deceased, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Case No. 4:17-CV-2131 NAB |
| ) | |
| ANDREW M. SAUL[1], ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Athena M. Weakley's appeal regarding the denial of disability insurance benefits and supplemental security income under the Social Security Act for her husband who died while this claim was pending before the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

## Issues for Review

Weakley's widow presents four issues for review: (1) the administrative law judge ("ALJ") failed to properly consider the medical opinion evidence of Dr. Peter Montgomery, Weakley's treating primary care physician, (2) the ALJ failed to find that Weakley's mental disorder was a severe impairment, (3) the ALJ improperly relied upon the opinion of a single decision maker, and (4) the ALJ failed to address Weakley's need to use a cane. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or

equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).

The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*,

335 F.3d 726, 729 (8th Cir. 2003). "In this substantial-evidence determination, the entire administrative record is considered but the evidence is not reweighed." *Byes v. Astrue*, 687 F.3d. 913, 915 (8th Cir. 2012).

**Discussion**

In this case, the ALJ found that Weakley had the severe impairments of spine disorder and right ankle injury. (Tr. 35.) The ALJ also determined that Weakley had the RFC to perform sedentary work, except he was limited to occasionally climbing ramps and stairs, but never ladders, ropes, and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; and occasional exposure to vibration. (Tr. 37.)

**Severe Impairment**

The first issue is whether the ALJ should have found that Weakley's mental impairments were severe. After the ALJ has determined that a claimant is not engaged in substantial gainful activity, the ALJ then determines whether the claimant has a severe impairment or combination of impairments that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii), 416.909, 416.920(a)(4)(i)-(ii)[2]. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908. To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R §§ 404.1520(c), 416.920(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754 (8th Cir. 2001)). "An impairment is not severe if it amounts only to a slight

---

[2] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927, the court will use the regulations in effect at the time that this claim was filed.

abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007)). "It is the claimant's burden to establish that his impairment or combination of impairments are severe." *Kirby*, 500 F.3d at 707 (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708.

Weakley was admitted to the hospital between April 19-23, 2013 for suicidal ideation after being fired by his parents. (Tr. 378-98.) He took approximately 20 tablets of Ativan. He was diagnosed with major depression, panic, anxiety, and questionable substance abuse at the time of admission. (Tr. 389.) At the time of discharge, he was stable with a better mood and affect. (Tr. 391.) His discharge diagnoses were major depressive disorder and generalized anxiety. (Tr. 391.)

On March 3, 2014, Dr. David Peaco, a consultative psychologist, performed a psychological evaluation regarding Weakley's application of benefits. (Tr. 718-720.) Weakley reported a history of mental health treatment since 1996, a hospitalization for aggressive behavior in 1997 and five additional times, including the 2013 suicide attempt. Weakley reported a prior addiction to heroin and excessive drinking between 2001 and 2011. Weakley also informed Dr. Peaco that he had occasional feelings of sadness, but was not suicidal. He reported first exhibiting anxiety in 2012 and frequent anxiety and occasional episodes of intense anxiety since then. Weakley also reported symptoms of attention deficit hyperactivity disorder. He reported a fairly active day and being independent in daily activities.

Dr. Peaco observed that Weakley was fidgety with an excessive amount of speech. He observed that Weakley's tone and pace of speech was normal, his flow of thinking was unfocused,

5

his affect was normal, with depressed mood and intact orientation. Dr. Peaco opined that Weakley's delayed memory and social comprehension was above average. He opined that Weakley' working memory, fund of general information, and vocabulary skills were well above average. Dr. Peaco diagnosed Weakley with attention deficit hyperactivity disorder, combined type, generalized anxiety disorder, and adjustment disorder with depressed mood. Dr. Peaco opined that Weakley was able to understand and remember simple instructions with mild impairment with completing tasks, concentration, and social functioning. He also opined that his capacity to adjust to and cope with the world around him was mildly impaired due to inattentiveness, anxiety, and mild depression.

In 2015, Weakley visited Psychiatric Care and Research (Tr. 758-60.) The notes from those three visits are brief and only provide limited information.

Dr. Krishman, a pain management doctor, treated Weakley in 2014 and 2016. (Tr. 726-47, 1260-1326.) Between July 2014 and October 2014, she observed that he was depressed, anxious, and talkative. (Tr. 728, 732-33, 736-37, 742.) Weakley returned to Dr. Krishman in February 2016. At that visit, a Psychological/Pain Management Risk screening revealed that Weakly was at a very high risk for medication misuse. (Tr. 1280-81.) Visits with Dr. Krishman's office in March and April 2016 indicated Weakley exhibited depression and anxiety upon examination. (Tr. 1261-62, 1274, 1276.) A drug screen given on March 1, 2016, indicated that Weakley was positive for non-prescribed morphine, codeine, oxycodone, and oxymorphone, but the test was negative for his prescribed medication, Norco. (Tr. 1268, 1312-14.) He informed nurse practitioner Jennifer Axley that he did not have any additional narcotic medication and would not take them again. (Tr. 1268.) He was sent a warning letter. (Tr. 1325.) On March 30, 2016, a drug screen indicated that his prescribed medication was not detected. (Tr. 1312-14.) On

April 4, 2016, he was sent a second warning letter because his drug screen was negative for prescribed medications. (Tr. 1324.) Weakley died on July 2, 2016 due to methadone and diphenhydramine intoxication exacerbating arteriosclerotic and hypertensive cardiovascular disease. (Tr. 20-27.)

The ALJ determined that Weakley's mental impairments of attention deficit hyperactivity disorder, anxiety disorder, and adjustment disorder with depressed mood do not cause more than minimal limitation in Weakley's ability to perform basic mental activities and were therefore, non-severe. (Tr. 36.) In support of this finding, the ALJ noted that Weakley did not receive any mental health care until 2015 and had received psychotropic medication from his primary care physician, Dr. Peter Montgomery. The ALJ noted that at the consultative examination and in his daily function report, Weakley indicated a fairly active lifestyle that was not limited by his mental impairments. The ALJ noted that Dr. Peaco determined that Weakley had no more than mild limitations. Finally, the ALJ noted Weakley did not experience any episodes of decompensation of extended duration.

Based on a consideration of the evidence in the record, as a whole, the Court holds that the ALJ's findings regarding Weakley's mental impairments are supported by substantial evidence in the record as a whole. There is no dispute that Weakley experienced depression and anxiety and received medication for them. "That a claimant has medically-documented impairments does not perforce result in a finding of disability." *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004). Weakley's disability application did not assert his mental impairments contributed to his inability to work. The fact that he did not allege his mental impairments in his application for disability benefits is significant, even if the evidence was later developed. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (citing *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993)). Weakley

7

testified that he was only limited by his physical impairments, because his anxiety and depression were controlled by medication from Dr. Montgomery. (Tr. 83.) The evidence in the administrative record indicates that Weakley's mental impairments did not significantly impact his ability to perform work related activities. Further, the notion that he was addicted to his prescription medication is speculative, considering that he did not have any of his prescription medications in his system during his last two drug screens. (Tr. 1268, 1324.) Claimant's burden to prove a severe mental impairment was not met in this case.

**Medical Opinion Evidence**

Next, Mrs. Weakley contends that the ALJ failed to give good reasons for giving little weight to the opinion of Weakley's primary care physician, Dr. Montgomery.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole."

*Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

"Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted). The court reviews "the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

Dr. Montgomery treated Weakley from 2011 to 2015. He treated Weakley for back pain, mood disorder, anxiety, hypothyroidism, pneumonia, abdominal pain, migraines, tear of talofibular ligament, right ankle sprain, and attention deficit hyperactivity disorder. (Tr. 468-74, 558-654, 687-715, 748-757, 761-1042.) Dr. Montgomery provided Weakley with his psychotropic medication and pain medication outside of the time he was being seen by pain specialists.

Dr. Montgomery completed several medical source statements regarding Weakley. In the October 2013 statement, Dr. Montgomery opined that Weakley had not been capable of performing sedentary or light work, even if he had the freedom to alternate sitting and standing during the day. (Tr. 468-69.) He further opined that Weakley could not stand or walk, but could

9

sit for one hour in an eight hour work day before requiring a rest or alternate position. (Tr. 470.) He indicated that Weakley needed to lie down and stand for two hours in an eight hour day (Tr. 470.) He indicated that Weakley could lift 0 to 5 pounds for eight hours, 6-10 pounds for four hours, and 11-15 pounds for 1 hour, but could not lift over 15 pounds. (Tr. 470.) Dr. Montgomery found he could only carry 0-5 pounds for one hour and carry nothing over 5 pounds. (Tr. 470.) He opined that Weakley could stoop, kneel, and crouch for 30 minutes total on a regular and continuing basis in an eight hour day. (Tr. 472-73.) Dr. Weakley wrote "none" in the space inquiring whether there were limitations on cervical spine range of motion. (Tr. 473.)

The second medical source statement on July 17, 2015, again stated Weakley had not been capable of performing sedentary or light work, even if he had the freedom to alternate sitting and standing during the day. (Tr. 748-49.) Dr. Montgomery again opined that Weakley could not stand or walk, but could sit for one hour in an eight hour work day before requiring a rest or alternate position. (Tr. 470.) He stated that Weakley had to lie down 4 hours and sit 1 hour in an eight hour work day, but not stand or walk continuously at all. (Tr. 750.) Dr. Montgomery opined that Weakley could lift and carry up to five pounds, but no more than 5 pounds, for 1 hour in an eight-hour workday. (Tr. 750-51.) Again, Dr. Montgomery indicated that Weakley could not stoop, kneel, or crouch. (Tr. 752-53.) The doctor left the space blank inquiring whether there were limitations on cervical spine range of motion. (Tr. 753.)

On July 17, 2015, Dr. Montgomery also completed medical statements regarding low back pain, foot problems, and chronic pain syndrome. (Tr. 755-757.) Regarding Weakley's low back pain, Dr. Montgomery indicated that Weakley's symptoms included neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, sensory or reflex loss, need to change position more than once every two hours, and inability to ambulate effectively. (Tr. 755.) He indicated

10

that Weakley's pain was moderate. He indicated that Weakley could stand 15 minutes at one time, sit 30 minutes at one time, and work 1 hour per day. (Tr. 755.) He indicated that Weakley could lift 5 pounds on an occasional basis, but could not lift anything on a frequent basis. He wrote that Weakley could occasionally bend, but never stoop. Regarding foot problems, Dr. Montgomery wrote that Weakley had a tear of talofibular ligament. He stated that Weakley could stand for 15 minutes at one time and would need to elevate his legs frequently during an 8 hour day. He also stated that Weakley was unable to walk a block at a reasonable pace on a rough or uneven surface, walk enough to shop or bank, climb a few steps at a reasonable pace with the use of single handrail. (Tr. 756.) He stated that Weakley's pain was moderate. (Tr. 756.) Regarding Weakley's chronic pain, Dr. Montgomery noted his back pain and tear of talofibular ligament. (Tr. 757.) He indicated that Weakley had marked limitations in activities of daily living, but not social functioning or concentration, persistence, or pace. (Tr. 757.)

The ALJ gave little weight to all of Dr. Montgomery's opinions. (Tr. 47.) The ALJ noted several inconsistencies among the opinions completed on the same day. (Tr. 47.) For example, the medical source statement indicates that Weakley cannot stand at all, but the medical statements regarding foot problems and low back pain indicate he can stand for 15 minutes at one time. The ALJ also stated that the medical source statements were unsupported by Dr. Montgomery's contemporaneous office or progress notes. He also stated that the course of treatment was inconsistent with the level of disability indicated in the medical opinions. He noted that the opinions were conclusory, providing "very little explanation of the evidence relied on in forming that opinion." (Tr. 47.) Finally, the ALJ determined that Dr. Montgomery's assessment that Weakley had marked limitations in activities of daily living was also entitled to little weight.

Mrs. Weakley asserts that clinical findings on objective tests and the narcotic medication taken by Weakley provide support for Dr. Montgomery's medical opinions. The Court disagrees. While the records provide support for Weakley's diagnoses and treatment, the record as a whole does not support the significant limitations described in Dr. Montgomery's medical opinions. Dr. Montgomery did not explain how any of his treatment records or any clinical findings supported his opinion. "The checklist format, generality, and incompleteness of the assessments limit the assessments' evidentiary value." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Holstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001)). Because Dr. Montgomery's treatment notes and the other objective evidence in the record fail to support the significant limitations in his opinions, his opinion is entitled to less weight.

**Single Decision Maker**

Next, the ALJ erroneously gave some weight to the RFC conclusions of a single decision maker, because he incorrectly identified her as a physician. (Tr. 46, 95-96, 108-109.) A single decision maker is not a medical source and his/her opinion is not due any significant weight. *Benton v. Colvin*, No. 2:14-Cv-92 NCC, 2016 WL 1161582 at *12 (E.D. Mo. Mar. 23, 2016). The ALJ may not rely on an opinion from a single decision maker. *Id.* Standing alone, the ALJ's reliance on the testimony of a nonmedical expert under the standard for evaluating a medical consultant would be reversible error. *See Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007). In this case, however, the ALJ did not adopt or give significant weight to the RFC of the single decision maker. The ALJ's RFC was more restrictive that the single decision maker's RFC, in congruence with the other evidence in the record. For example, the single decision maker opined that Weakley could perform light work and had no postural limitations and no limitations regarding vibration. The ALJ found that Weakley was limited to sedentary work and could never climb

ladders, ropes, or scaffolds. The ALJ also found that Weakley could only occasionally climb ramps or stairs and balance, stoop, kneel, crouch, and crawl. The ALJ found that Weakley could only have occasional exposure to vibration. The ALJ's decision is based upon a much broader medical record as well as his own assessment of Weakley's credibility. "Consequently, the ALJ supported his opinion with sufficient medical evidence and medical opinions for the Court to conclude, that even if the ALJ understood that the RFC assessment was completed by a non-physician, he would have reached the same result, and any error in attributing the assessment to that of a physician does not warrant remand." *Howard v. Astrue*, No. 4:11-CV-1282 SNLJ, 2012 WL 4378211 at *9 (E.D. Mo. Aug. 8, 2012). Therefore, because the ALJ and single decision maker's RFC determinations were substantively different, the Court finds that the ALJ's error was harmless. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided the case differently if the error had not occurred).

**Failure to Consider Weakley's use of a Cane**

Finally, Mrs. Weakley asserts that the ALJ failed to consider Weakley's use of a cane and therefore, failed to obtain testimony from a vocational expert regarding whether there were jobs in the national economy for someone who needed a cane to ambulate. The ALJ did not account for the use of a cane in the RFC. The ALJ did not Weakley's use of a cane in the opinion.

Weakley testified that his cane was prescribed by a doctor to keep his posture straight and he was using the cane when he fell off the porch. (Tr. 76.) He also testified that his doctor recommended that he use a cane. (Tr. 78-79.) He stated that he can do work around the house without a cane for a very short period of time. (Tr. 87.) During a visit for cough and pneumonia treatment on September 8, 2013, a notation in the file states, "Lawyer says he needs to get a note

13

saying ok to have a cane." (Tr. 618.) Dr. Montgomery then prescribed a cane on that date. (Tr. 619.) In December 2013, Weakley received a 2-3-week prescription for a boot for his right ankle sprain. (Tr. 645, 648, 657.) During his visit to the Social Security Field Office in December 2013 and at subsequent doctor's visits, Weakley was observed using a cane. Dr. Montgomery indicated that Weakley had an inability to ambulate effectively in the Medical Statement Regarding Low Back Pain for Social Security Disability Claim. (Tr. 755.)

The RFC is defined as the most the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do sustained work-related physical and mental activities on a regular and continuing basis.[3] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907.

In this case, the claimant has not met his burden to establish that the RFC should have included the use of a cane. The medical record does not indicate that any medical doctor initiated his use of the cane. The record shows that Weakley, at the request of his legal counsel, sought a prescription for his use of the cane. A claimant's self-report to a physician is not sufficient to support the necessity of any assistive device. *See Brooks v. Berryhill*, No. 1:16-CV-73 NCC, 2017

---

[3] A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

WL 4280619 at *3 (E.D. Mo. 2017). The claimant has not directed the court to any evidence that he would have received a prescription for this cane if he had not asked for one. Finally, the evidence of record does not support a finding of Weakley's need to use an assistive device when standing or walking. The Court found previously that Dr. Montgomery's opinion was entitled to little weight. Therefore, the Court finds that the ALJ's decision to not include a limitation regarding an assistive device in his RFC determination to be supported by substantial evidence and the ALJ was not required to obtain the testimony of a vocational expert regarding the same.

## Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only 'enough that a reasonable mind would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-993 (8th Cir. 2014) (internal citations omitted). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 17.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of September, 2019.